## Bantel *v.* Bantel, Appellant.

Argued November 16, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Roy Pressman* submitted a brief for appellant.

*William F. Quinlan,* with him *Victor Frey,* for appellee.

OPINION BY ARNOLD, J., January 14, 1949:

The respondent-wife appeals from a divorce decree entered because of her adultery with Anthony Chelenza.

Libellant's bill of particulars and his testimony instanced some thirty-two telephone conversations in which

she made appointments with named men. The libellant was an electrician and he heard these conversations by tapping the telephone line. He demonstrated to the master and parties the device and method that he used. The indecencies of these conversations need not be repeated.

The important question was whether, on September 30, 1946, she committed adultery with the co-respondent According to libellant she had had other meetings with him. Libellant heard her making an appointment with Chelenza for that night. It was testified that libellant and a deputy constable watched and that she left her house about 9:30 p.m., walked more than a block and entered the front seat of Chelenza's automobile, which was parked near the curb. The Chelenza car proceeded about five miles and was then parked in a secluded place for fifteen minutes. It then was driven some four or five miles to Chelenza's commercial garage, and after driving into it, the doors were closed. No lights were on. The deputy constable and the libellant parked their car and went to an open window of the garage, turned on a flashlight and caught respondent flagrante delicto. The libellant entered the garage and both he and the constable saw the disarrangement of the pair's clothing and some nudity.

Respondent denied everything. As to the events of September 30, Chelenza corroborated her with the same chivalry he previously exhibited in the garage, when he offered the deputy constable $50 to "give her [respondent] a break." Their story was that Chelenza had a brother, Carmen, whose wife, Eleanor, was respondent's good friend; that the latter had made an appointment for the respondent to see a lawyer at his house in the northern end of Philadelphia (five miles away) at 9:30 p.m.; that Eleanor had said that she and her husband would take the respondent there by automobile, but Eleanor became ill and Carmen had substituted his brother, Anthony, as the driver. Respondent testified that she rode and remained in the back seat,—for she

did not know him well. They further testified that they drove to the lawyer's house but he was not there, and upon driving back Chelenza's "brakes gave out," and he asked the respondent if she minded going to the garage so they could be fixed; that the garage doors when open projected over part of the sidewalk, and that therefore he closed them for the safety of pedestrians. The master and the court both disbelieved this testimony, and found that the respondent had committed the adultery charged. After an independent examination of the evidence we concur.

When caught in the garage libellant had the respondent and Chelenza immediately arrested for adultery and taken to the police station. The respondent, however, testified that after she got home from that preliminary hearing her husband apologized and went to bed with her and condoned the offense. This the libellant vigorously denied, and the court below refused to believe her. Normally if this respondent were innocent, she would have despised her husband; and if she were guilty the libellant would loath her. The court below found that she was not a credible witness. We agree. When she said she didn't, she did, and when she said she did, she didn't.

Decree affirmed.